COMPAGNIE FRANCAISE DU TELEGRAPHE DE PARIS A NEW YORK *v.* WESTERN UNION TELEGRAPH COMPANY and others.

*(Circuit Court, S. D. New York. July 8, 1881.)*

CONTRACT—RIGHTS UNDER.

Where a contract was made between two telegraph companies, whereby it was agreed that certain unassigned messages should be sent on the wires of one of the companies, and the other company, pending the life of the contract, should sell out all its property to a third company, its members taking stock in and becoming members of the company created by such consolidation, it is no ground for an injunction at the suit of one of the original parties to the contract against such consolidated company to prevent carrying out the consolidation agreement.

In Equity.

*George F. Edmunds, Charles M. Da Costa,* and *Lewis L. Delafield,* for plaintiff.

*Wager Swayne* and *Everett P. Wheeler,* for defendants.

BLATCHFORD, C. J. I cannot regard it as an open or a doubtful question that the consolidation agreement was valid, whether considered with reference to the general principles applicable to it, or to the statute of New York, or to the act of Congress. But it is contended for the plaintiff that that agreement is in violation of the rights which the plaintiff has under the contract between it and the

American Union Company.   There is nothing before the court to enable it to measure with the least approach to accuracy, or otherwise than by the merest fancy or conjecture, the extent or the pecuniary value of those rights, which extend, at most, only to unconsigned messages, or the pecuniary amount of any damages, either past, or probable in the future, from the violation of their rights. On the other hand, it distinctly appears that the controlling reason operating with the American Union Company to sell its property, was the great disadvantage in pecuniary result of continuing its business as an independent company, in comparison with the advantage to its shareholders of becoming such in the Western Union Company.   When to this is added the fact that by the pooling or joint purse arrangement existing between the plaintiff and the other two cable companies, it makes no pecuniary difference to the plaintiff whether all messages are sent over the plaintiff's cables or whether all are sent over the cables of one or both of the other two cable companies, it is plain that the injury to result to the American Union Company from preventing the carrying out of the consolidation agreement is far greater than any possible injury to result to the plaintiff from a contrary course; and that, therefore, the case is not one for equitable interference in that regard.

In respect to the prayers of the bill for injunctions touching the agreement of December 18, 1880, Schedule D to the bill, the rescission and cancelling of that agreement remove all ground for any injunction regarding it.

The prayers for injunctions against the Western Union Company embodied in the last two subdivisions of prayer 9, and in the nine subdivisions of prayer 10, amount to a prayer for the specific performance by the Western Union Company of the agreements, Schedules A and B to the bill.   The plaintiff has now, in its pooling arrangement with the other two cable companies, the practical benefit of a full performance of those agreements, in respect to unconsigned messages, to the same extent as if every message that goes over any cable of either of said other two companies were to go over its own cables.   If, hereafter, damage is shown to result to the plaintiff from the sending by the Western Union Company of unconsigned messages over some cable other than a cable of the plaintiff, or of said other two cable companies, it may be proper to ask the interference of a court of equity.   In such case the question of the existing mutuality of the said agreements, Schedules A and B to the bill, and the question whether said agreements belong to a class of which spe-

cific performance will be decreed, and the question whether the remedy at law is complete, adequate, and plain, and the question as to what control the court could have over the plaintiff to compel it to observe the agreements on its part, will come up for consideration.

The motion for an injunction must be denied.